UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES, : | |
| : | CRIMINAL CASE NUMBER: |
| v. : | |
| : | 3:14-cr-55 (VLB) |
| OSCAR VALENTIN, et al., : | |
| *Defendants*. : | March 30, 2016 |

### MEMORANDUM OF DECISION

Nestor Pagan moves to dismiss Counts One, Two, and Three, arguing that the Government violated his due process rights because it collected only select portions of 360 hours of private surveillance video from the Huntington Street apartment complex on September 11, 12, and 13. ECF No. 81-1. Alternatively, Pagan seeks to preclude the Government from introducing the extant video under the rule of completeness. *Id.* For the following reasons, the Court DENIES the motion to dismiss or preclude.

A defendant may demonstrate a due process violation based on lost evidence in one of two ways. *United States v. Collins*, 799 F.3d 554, 569 (6th Cir.) ("The Supreme Court has established two tests to determine whether a government's failure to preserve evidence amounts to a due process violation."), *cert. denied*, 136 S.Ct. 601 (2015). A defendant may show that the missing evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984). If the defendant cannot demonstrate that the lost evidence was material and exculpatory, he may show

1

that the evidence was "potentially useful" and destroyed in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see Illinois v. Fisher*, 540 U.S. 544, 549 (2004) (per curiam) ("[T]he applicability of the bad-faith requirement in *Youngblood* depended . . . on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence.").

Pagan offers two reasons for asserting that the missing video was either material and exculpatory or potentially useful.[1] ECF No. 81-1. Pagan first argues that the missing video would have shown that he frequently visited the apartment complex. *Id.* at 6. This argument fails because Pagan offers no support for this theory. Without any evidence suggesting that Pagan visited the apartment complex at other times or had a legitimate reason to be there, the Court has no obligation to inquire further into this unsupported assertion by way of an evidentiary hearing. *Cf. United States v. Defede*, 7 F.Supp.2d 390, 394 (S.D.N.Y. 1998) ("[A] criminal defendant is not entitled to an evidentiary hearing on a motion to suppress evidence absent the submission of an affidavit based on personal knowledge setting forth facts necessary to make out a *prima facie* case

---

[1] In reply, Pagan offers a further rationale for dismissal: "Without the complete video, the defendant's ability to develop critical impeachment evidence is severely limited." ECF No. 92 at 6. There are three problems with this argument. First, a party may not assert a new argument in a reply brief. *See In re Harris,* 464 F.3d 263, 268 n. 3 (2d Cir. 2006) ("We generally do not consider issues raised in a reply brief for the first time."). Second, Pagan does not provide any evidence in support of his hypothesis, only unsupported assertions. *Cf. Defede*, 7 F.Supp.2d at 394. Third, the value of the impeachment evidence is based on what the cooperating witnesses "now claim." ECF No. 92 at 6. Thus, it would not have been "apparent" to the Government at the time it collected the video that the missing video had impeachment value and its failure to collect the missing video cannot be said to have been in bad faith if its value became apparent only after the apartment complex destroyed the video.

that the evidence was obtained in violation of the defendant's rights."). Further, with respect to the *Trombetta* claim, Pagan also has not alleged that he would be unable to obtain comparable evidence by other reasonably available means, *e.g.*, Pagan has not alleged that he is unable to offer testimonial or other comparably credible evidence establishing his frequent visits to the locale.[2]

This argument also fails because Pagan does not explain how the missing video would have demonstrated that he was a frequent visitor. At most the missing segments would show that Pagan repeatedly visited the apartment complex on the day before, the day of, and the day after the assault took place. Such evidence would be equally, if not more, inculpatory. *See United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989) (rejecting due process claim because missing "evidence standing alone would be as probative of [defendant's] guilt as of his innocence"). Pagan does not argue that the Government had a duty to collect video from any other days. If Pagan had, the Court would have disagreed because, even assuming that the Government has an affirmative obligation to seek exculpatory evidence in some circumstances, that duty cannot encompass the duty to obtain weeks' worth of private surveillance video of no asserted or apparent evidentiary or investigative use.[3] The Court therefore rules that Pagan's first reason is insufficient to warrant an evidentiary hearing for the purpose of

---

[2] In reply, Pagan argues that "the defense no access to the cooperating witnesses other than through cross examination at trial." ECF No. 92 at 8. He does not, however, allege that *only* cooperating witnesses could offer this evidence.

[3] For purposes of this motion, the Court assumes but does not decide whether "a bad faith failure to collect potentially exculpatory evidence would violate the due process clause." *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989).

3

showing that the missing video is either material and exculpatory or even potentially useful.

Pagan also asserts that the missing video could have shown that someone else with a motive to commit the crime was at the Huntington Street apartments on the day before the crime. ECF No. 81-1. Again, Pagan provides insufficient support for this hypothesis. Pagan asserts that it was "common knowledge that there were individuals other than the defendants who had motive to harm the victim," *id.* at 6, and provides only a recorded telephone conversation where Pagan's co-defendant muses that that "the nephews said they were going to get him and kill him, do you remember?," ECF No. 83. This evidence is insufficient for two reasons. First, a co-defendant's musings about other suspects is hardly evidence that the Government should be expected to rely upon. Even taking Valentin's recorded call at face value, the evidence does not connect the nephews to the apartment complex on the day prior to the assault. Without this evidence, it would not have been "apparent" to the Government that the nephews were present at the apartment complex to stake out the assault. Indeed, why would the nephews need to stake out their uncle's apartment building? Presumably, they would have been there before. The Court therefore rules that Pagan has not presented sufficient evidence to warrant an evidentiary hearing on the question of whether the missing video was material and exculpatory on the basis that the missing video depicted other potential, unidentified suspects at the crime scene on the day before the crime.

The fact that the missing video may have featured some unidentified suspects visiting the crime scene the day before is—at best—potentially useful. But even assuming that the missing video is potentially useful, Pagan has failed to demonstrate bad faith on the part of the Government.  Pagan provides no evidence in support of his bad-faith argument, other than the fact that only portions of the 360 hours of video were obtained and preserved.  Pagan offers no evidence and makes no assertion that the Government was aware of any facts which would have led it to the reasonable belief that video other than those which it secured was relevant to its investigation of the crime.

In contrast to Pagan's arguments, the Government has provided an affidavit from the investigating officer averring that he downloaded only the information necessary to the investigation based on the other evidence already known to police and no one from the police department instructed the apartment complex to delete the remainder of the video.  ECF No. 91-2.  The Government also provided an affidavit from the manager of the apartment complex averring that there was no policy concerning the preservation of its surveillance videos.  ECF No. 91-1.  The Government thus did not act in bad faith because it did not order the destruction of evidence or fail to act knowing that *relevant* evidence would be destroyed.  *See United States v. Sherman*, 293 F. App'x 158, 160 (3d Cir. 2008) ("In this case, there was no bad faith on the part of the Government, as the surveillance video was preserved at a time when neither the police nor the private contractor had reason to believe earlier portions of the tape may have had some evidentiary value.  The evidence was destroyed as a result of the normal

functioning of the recording equipment, not a decision by police to delete the tape. We see no error."). The Government preserved the evidence it reasonably concluded would be relevant based on the facts already known, and Pagan provides no reason to suggest otherwise.

In the alternative, Pagan requests that the Government be precluded from introducing the video under the rule of completeness. Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." The Second Circuit has "interpreted this Rule to require that a statement be admitted in its entirety when [it] is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, . . . or to ensure a fair and impartial understanding of the admitted portion." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (internal quotation marks and citations omitted). Pagan offers no explanation as to why the entire video is necessary to explain the portions the Government seeks to introduce, to place those portions in context, to avoid misleading the jury, or to ensure a fair and impartial understanding of the video segments. Rather, Pagan argues that the bad-faith destruction of the missing video necessitates exclusion. But as the Court has already explained, there is no evidence that the Government acted in bad faith, and Pagan offers no sound and supported explanation for why the missing video would have helped his case. Finally, although the Rule 106 applies to videos, its application is less clear in situations where, as here, the video

depicts a self-explanatory conduct. For the foregoing reasons, the motion is DENIED.

**IT IS SO ORDERED.**

                _____/s/_____
                **Vanessa L. Bryant**
                **United States District Judge**

**Dated at Hartford, Connecticut: March 30, 2016**